490 So.2d 565 (1986)
SAFECO INSURANCE COMPANY, Plaintiff-Appellant,
v.
FARM BUREAU INSURANCE COMPANIES, et al., Defendants-Appellees.
No. 85-579.
Court of Appeal of Louisiana, Third Circuit.
June 6, 1986.
*566 Carolyn Pratt Perry, Baton Rouge, for plaintiff-appellant.
Fruge & Vidrine, Jack C. Fruge, Sr. and Richard Vidrine, Platte, for defendants-appellees.
Before DOUCET, LABORDE and BOND[*], JJ.
*567 W. ELLIS BOND, Judge Pro Tem.
This is an action by Safeco Insurance Company against Farm Bureau Insurance Company and its insured, J. Curtis Guidry, d/b/a Guidry Farms, Inc. (sic) to recover or to obtain contribution for workmen's compensation benefits allegedly paid in error.
Most of the facts are not in dispute. The essential dispute is causation of the workmen's compensation claimant's present disability and whether or not an accident or aggravation of a preexisting back condition caused or contributed to the necessity for claimant's third back operation. There is not known to be any suit pending by the claimant, David K. Guidry, and he is not a party to this action. We will refer to him hereinafter as Guidry, not to be confused with his father, J. Curtis Guidry, or Guidry Farms.
The evidence shows that Guidry sustained a back injury while employed by his father in December 1976, while defendant, Farm Bureau, provided workmen's compensation benefits for Guidry Farms. Conservative treatment by Dr. Rafes, a neurosurgeon of Beaumont, Texas, over a period of about four months, proved inadequate and surgery was then performed on the L5-S1 disc. Some months thereafter he reinjured his back while assisting on the farm and while still disabled. After considerable medical treatment and testing procedures, surgery was performed upon Guidry's low back by Dr. S. Henry LaRocca in New Orleans on November 15, 1978. Additional disc material was removed at the L5-S1 level and a fusion of vertebrae L4 to the sacrum was performed. Dr. LaRocca pronounced Guidry able to work as of January 29, 1980, finding that the fusion had taken and become solid.
Guidry has never filed a lawsuit against Farm Bureau and it is not known if he ever consulted an attorney. In any event, Dr. LaRocca testified he was never asked to assign a percentage of disability to Mr. Guidry, but had he been asked, he would have "put him as total permanent disability regarding physical labor."
Guidry then worked nearly a year for Oilfield Construction Company in the Eunice, Louisiana area, operating a bulldozer. He testified he never missed a day of work due to his back, but did experience some back pain after working a long day, more in the nature of tiredness. Thereafter, he worked for about four months in the Baton Rouge, Louisiana area, for B & K Construction Company, whose workmen's compensation insurer was Safeco.
It is this period of time that Guidry's condition is at issue. He has testified that he considered himself well and able to do heavy work while working from January 1980, until early January 1981. He claims that on or about January 6, 1981, he slipped on the wet track of a bulldozer and hurt his back in an effort to keep from falling. He described the pain as sharp, like a pulled muscle. He ignored it, but it continued to get worse. It was a different pain from what he experienced while working for Oilfield Construction. He states that he definitely did have an accident at that time and returned to see Dr. LaRocca when the pain kept getting worse.
Dr. LaRocca testified that he saw Guidry on July 25, 1980, at which time his notes show, "Patient is cautioned against any heavy physical activity but probably could resume some form of work." He stated he thought Guidry's disability to be permanent from the first time he saw him.
Guidry next saw Dr. LaRocca on January 14, 1981, and at that time told the doctor he had been working on a bulldozer and got pain into his back and right lower extremity without a specific injury; that he had a one month history of recurrent pain in the back and right leg, getting worse with time and activity. The doctor's findings on that date indicated a new ruptured disc, but X-ray examination showed the fusion to be intact. Guidry was told that he had to quit work, but he couldn't just then for economic reasons. Dr. LaRocca said, "We began talking about getting him off the job, and he was started on medication at that time." When asked again if Guidry related that problem to any new injury, the doctor replied, *568 "No new injury. No. It was something that developed as he worked on the job. Further, I would have thought him incapable of doing that job for any significant length of time without having problems recur and, in point of fact, that's exactly what happened, ............. a spine which has this characteristic is simply not going to hold up under physical labor."
Dr. LaRocca's office record of the January 14, 1981, visit by Guidry notes, "...... had done remarkably well getting back to work on a bulldozer until approximately one month ago when he noted increasing axial low back pain with some return of his siatic-type of right leg pain. Also, problem # 2 is right knee anterior cruciate deficit. With an old football injury history and an operation the patient was getting off his bulldozer yesterday when his knee gave way."
Dr. LaRocca treated Guidry on February 13, 1981, and March 24, 1981. He continued to have pain and was sent to Touro Infirmary on April 13, 1981, for a myelogram which turned out normal. He was seen by Dr. LaRocca on June 6, July 21, September 1, November 9 and December 21, 1981. He wore a Raney jacket, or back brace, during most of that time.
Mr. Guidry testified he first reported an accident to his employer in April of 1981.
Mr. Guidry stopped seeing Dr. LaRocca after the December 21, 1981, visit. On January 15, 1982, Dr. John D. Jackson of Metairie, Louisiana, performed surgery on Guidry's back. The doctor's discharge summary, Safeco-7 shows that he found a free fragment of bone, rounded and jagged, pressed beneath the lamina on top of the nerve root. He found some bulging disc material, but did not think it was causing a great deal of difficulty, though he removed it anyway.
Mr. Guidry remains disabled from performing any type of heavy labor and now works as a car and truck salesman. Farm Bureau paid workmen's compensation benefits to Guidry through March 24, 1980. It appears that Guidry continued to draw benefits for about two months after he went to work, apparently not having bothered to notify Farm Bureau of his employment. They received a report from Dr. LaRocca on April 1, 1980, advising that Guidry could return to work as of January 29, 1980, and discontinued weekly benefits at that time. They continued to pay medical expenses until March 13, 1981, including his visits to Dr. LaRocca after his claimed injury in January 1981. They received a report from Dr. LaRocca in early May of 1981, that alerted them Guidry was again unable to work. They then contacted Guidry and learned that Safeco was paying the medical expenses and weekly benefits. The adjuster, Mr. LeBleu, persuaded Guidry not to let Safeco know of their involvement.
Safeco learned of Mr. Guidry's prior injuries and operations in August of 1981. A letter request by Safeco to Farm Bureau on August 18, 1981, for information did not result in a response until July 30, 1982.
The trial court rendered judgment in favor of Farm Bureau and against Safeco, rejecting the plaintiff's demands. No written reasons for judgment were rendered. The preamble of the judgment states:
"This matter, having been submitted to the court based on plaintiff's elicitation of testimony on February 1, 1984, and on the oral deposition of William Briggs, taken on June 8, 1984, the court considering the law and the evidence to be in favor of the defendants, Farm Bureau Insurance Company and J. Curtis Guidry, d/b/a Guidry Farms, Inc., for the reasons assigned in defendants' memorandum dated October 18, 1984."
Manifest error is committed when the trial court assigns as reasons for judgment the argumentative brief of counsel, making it obvious it has not adequately weighed the evidence before it. Cashio v. Holt, 425 So.2d 820 (La.App. 5th Cir. 1982), writ denied 430 So.2d 94 (La.1983). We find that defendants' post trial brief to the trial court was not only highly argumentative but did not recite all of the relevant facts and law.
*569 We therefore hold that manifest error was committed by the trial court and it is appropriate for us to resolve the issues, insofar as possible, from the record before us.
An accident, within the meaning of the workmen's compensation law, could result from aggravation of a preexisting physical condition. The chain of causation required by La.R.S. 23:1031 is that the employment causes the accident, the accident causes injury and the injury causes disability. Robichaux v. Terrebonne Parish School Board, 426 So.2d 241 (La.App. 1st Cir.1983).
The determination as to whether there was or was not an accident may be made from the uncontroverted testimony of the claimant. Daney v. Argonaut Ins. Co., 421 So.2d 331 (La.App. 1st Cir.1982).
Guidry did not report an accident to his employer until April 10, 1981. He had, however, seen Dr. LaRocca not only on January 14th but also on February 13th and March 24th. Dr. LaRocca's medical report, dated April 9th, one day before Guidry reported an accident, shows that hospitalization was already scheduled for a myelogram which was in fact performed on April 13, 1981.
We believe that Guidry's testimony concerning the occurrence of an accident in early January 1981 is controverted by his statements to Dr. LaRocca. His failure to notify his employer of such an accident, even though he was being treated by a physician, further detracts from his credibility.
The issue as to whether or not the claimant's condition is an aggravation of a preexisting condition is resolved by the finding of a bone fragment by Dr. Jackson in the subsequent surgery. Portions of bone, lamina, had been removed from Guidry's spinal column in the course of the two prior surgeries, as well as a fusion of the vertebrae below that area. The record is devoid of any showing of any accidental blows to Guidry's low back area while employed by B & K Construction Company that could indicate a fracturing off of a piece of bone.
The bone fragment found to be pressing upon the nerve root at the L5-S1 interspace was the cause of Guidry's disability during that period of time. Considering all the medical information available, we determine that it is more probable than not that the bone fragment was residue from and the result of prior surgeries necessitated by the claimant's initial injury while employed by Guidry Farms. It was not the result of aggravation of a preexisting condition during the course of claimant's employment by B & K Construction Company.
Consequently, the responsibility for workmen's compensation benefits rested upon Farm Bureau since the disability related back to Guidry's initial injury while employed by its' insured. Safeco has properly paid benefits pending a judicial determination of liability, and Farm Bureau has been unjustly enriched at Safeco's expense.
The action for unjust enrichment, or "action de in rem verso" has five elements:
"1. An enrichment.
2. An impoverishment.
3. There must be a connection between the enrichment and the impoverishment.
4. There must be an absence of cause or justification for the enrichment and impoverishment.
5. There is no other remedy at law; i.e., the action is subsidiary or corrective in nature."
LSA-C.C. art. 3499 (formerly C.C. art 3544). Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967).
Safeco's action herein meets all of those elements and it is entitled to recover the workmen's compensation benefits it has paid for which Farm Bureau was responsible.
An exception of prescription is found in the record, upon which no ruling of the trial court has been made. The *570 judgment on the merits appears to overrule it without comment. The exception is without merit. The action for unjust enrichment is prescribed by ten years. Bazile v. Arnaud Coffee Co., 465 So.2d 111 (La.App. 4th Cir.1985), writ denied 468 So.2d 1212 (La.1985).
For the reasons herein assigned, we hold that Safeco is entitled to indemnification from defendants-appellees for all sums paid to or on behalf of David K. Guidry as workmen's compensation benefits or medical expenses as a result of an alleged work related accident on January 6, 1981. Plaintiff-appellant is entitled to indemnification for all such payments made prior to the date of judicial demand made on March 23, 1983, together with judicial interest at the rate of 12% per annum from that date, until paid. It shall recover the amount of all such payments made subsequent to March 23, 1983, with judicial interest from the date of said payments, until paid.
Costs in the trial court and of this appeal are taxed to defendants-appellees.
REVERSED AND RENDERED.
NOTES
[*] Judge W. Ellis Bond of the 14th Judicial District Court appointed to this court pro tempore by the Supreme Court.